J. S44003/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
              :          PENNSYLVANIA
         v.         :
              :
LARRY D. OLIPHANT,          :      No. 1427 EDA 2015
              :
         Appellant     :

Appeal from the PCRA Order, May 12, 2015,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0302351-2005

BEFORE:  FORD ELLIOTT, P.J.E., STABILE AND MUSMANNO, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:      **FILED AUGUST 18, 2016**

Larry D. Oliphant appeals from the May 12, 2015 order denying his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  After careful review, we affirm.

The relevant facts, as summarized by a prior panel of this court on direct appeal, are as follows:

> On the evening of November 18, 2004, [a]ppellant and his co-defendant, Ronald Bethea, were at the house of Mr. Bethea's cousin.  While there, Mr. Bethea received a telephone call that "one of his boys" had been attacked at the corner of 8th and Butler Streets.  After discussing the situation with [a]ppellant and another confederate, Donzell White, the three men decided to go to the corner of 8th and Butler Streets to avenge the beating.  Mr. Bethea asked his cousin to drive the men there, but his cousin refused to get involved.  Mr. Bethea then recruited his girlfriend,

Chaka Jenkins, to drive the men to the location of the beating in his cousin's dark blue minivan.

Mr. Bethea told [a]ppellant and Mr. White, "I am doing something about this," and provided [a]ppellant with a .45 caliber handgun. Mr. White gave [a]ppellant a one-piece "Dickie" jumpsuit to wear over his yellow tee-shirt and camouflage pants. Appellant also donned a camouflage hat.

When they arrived at the corner of 8th and Butler Streets, Mr. Bethea pointed out a man on the street who was working on his car. Mr. Bethea said to [a]ppellant, "That's the guy right there." The group then drove around the block. Appellant informed Mr. Bethea, "I'll take care of it for you," and exited the minivan with the handgun protruding from his jumpsuit pocket. While [a]ppellant was looking for his target, the others continued to drive around the area. Mr. Bethea noticed a heavy police presence and instructed Ms. Jenkins to drive back to the corner of 8th and Butler Streets to look for [a]ppellant. Once they spotted [a]ppellant, Mr. Bethea warned him "there were too many cops around." Nevertheless, [a]ppellant assured Mr. Bethea he would "take care of it."

Appellant continued to search for his target, and the others drove to a nearby pizza shop to await [a]ppellant's completion of the "job." After some time, Mr. Bethea became concerned [a]ppellant was taking too long, so he again directed Ms. Jenkins to drive the men back to the corner of 8th and Butler Streets. As the minivan approached the intersection, the group spotted [a]ppellant, who jumped into the front passenger seat of the minivan. Once in the vehicle, [a]ppellant informed the others, "I got him." Several police cars and an ambulance truck arrived at the scene of the crime, and Ms. Jenkins quickly drove away.

Police found the victim lying on the street. Six fired cartridge casings surrounded the area of the victim's body. As it turned out, the victim was an

innocent bystander, and not [a]ppellant's initial target. Several witnesses informed police they had observed a black male at the crime scene wearing a Dickie jumpsuit and a camouflage hat. One witness noticed the man in the jumpsuit and camouflage hat climb into a blue minivan, and recalled the letters "YPV" on the license plate.

Moments later, police officers heard the flash information over the radio and spotted the minivan a few blocks from the crime scene. A search of the minivan revealed a Dickie jumpsuit and handgun in the vehicle. Subsequent firearms testing confirmed that the six fired cartridge casings found at the crime scene had come from the handgun found in the vehicle. The Commonwealth charged [a]ppellant and Mr. Bethea with murder and related offenses.

*Commonwealth v. Oliphant*, 987 A.2d 821 (Pa.Super. 2009), *appeal denied*, 608 Pa. 620 (Pa. 2010) (unpublished memorandum at 1-4).

On September 11, 2007, appellant proceeded to a jury trial alongside his co-defendant, Ronald Bethea. Appellant was represented at trial by Robert Gamburg, Esq. (hereinafter, "trial counsel"). Following a six-day trial, appellant was found guilty of first-degree murder and possessing instruments of crime ("PIC").[1] On November 26, 2007, appellant was sentenced to a mandatory term of life imprisonment for the first-degree murder conviction and a consecutive term of two-and-one-half to five years' imprisonment for PIC.[2] On December 5, 2007, appellant filed a

---

[1] 18 Pa.C.S.A. §§ 2502 and 907, respectively.

[2] Appellant's co-defendant, Robert Bethea, was found guilty of one count of criminal conspiracy to commit third-degree murder and was subsequently sentenced to 20 to 40 years' imprisonment.

post-sentence motion for a new trial arguing, *inter alia*, that the trial court erred in instructing the jury on accomplice liability and criminal conspiracy. (*See* post-sentence motion, 12/5/07 at ¶¶ 23-29.) On April 3, 2008, appellant's motion was denied by operation of law, pursuant to Pa.R.Crim.P. 720(B)(3). Appellant filed a timely notice of appeal on April 25, 2008.

On October 20, 2009, a panel of this court affirmed appellant's judgment of sentence, and our supreme court denied allowance of appeal on September 7, 2010. On April 29, 2011, appellant filed a timely *pro se* PCRA petition, and Sondra Rodrigues, Esq. ("Attorney Rodrigues") was appointed to represent him. Attorney Rodrigues subsequently withdrew, and Daniel Silverman, Esquire ("Attorney Silverman") was appointed on June 12, 2013.

On September 30, 2013, Attorney Silverman filed an amended PCRA petition on appellant's behalf. The Commonwealth filed its motion to dismiss appellant's amended PCRA petition on January 2, 2014. On March 12, 2015, the PCRA court provided appellant with notice, pursuant to Pa.R.Crim.P. 907(1), of its intention to dismiss his petition without a hearing. Thereafter, on May 12, 2015, the PCRA court dismissed appellant's petition without a hearing. This timely appeal followed on May 13, 2015. The PCRA court did not order appellant to file a statement of errors

complained of on appeal, pursuant to Pa.R.A.P. 1925(b). Nonetheless, appellant filed a Rule 1925(b) statement on May 13, 2015.

On appeal, appellant raises the following issues for our review:

1. Was trial counsel ineffective for failing to object to the trial court's incomprehensible and error-filled instructions on how the jury could find liability for first-degree murder?

2. Was trial counsel ineffective for failing to object to the trial court's repeated instructions explicitly prohibiting the jury from considering the fact that the Commonwealth never presented the testimony of critical witness Donzell White?

3. Was trial counsel ineffective for failing to (a) object to the prosecutor's closing statement when he repeatedly argued that [a]ppellant's prior threats of violence, introduced for a limited purpose, showed [a]ppellant's propensity for violence and that the jury should convict [a]ppellant because his other crimes proved he is a violent man generally who is prone to killing[,] and (b) request the required cautionary instruction?

4. Was trial counsel ineffective for failing to object to the prosecutor's abject vouching when explaining, without any supporting evidence, why the Commonwealth did not charge Commonwealth witness Chaka Jenkins?

Appellant's brief at 3-4.[3]

---

[3] Appellant was represented by different counsel on direct appeal, and although allegations of layered ineffectiveness is generally required, the failure to object to various alleged trial errors would be subject to waiver on direct appeal.

Proper appellate review of a PCRA court's dismissal of a PCRA petition is limited to the examination of "whether the PCRA court's determination is supported by the record and free of legal error." **Commonwealth v. Miller**, 102 A.3d 988, 992 (Pa.Super. 2014) (citation omitted). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." **Commonwealth v. Lawson**, 90 A.3d 1, 4 (Pa.Super. 2014) (citations omitted). "This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding." **Commonwealth. v. Soto**, 2015 WL 8551090, at *3 (Pa.Super. 2015) (citation omitted). In order to be eligible for PCRA relief, a defendant must plead and prove by a preponderance of the evidence that his conviction or sentence arose from one or more of the errors listed at 42 Pa.C.S.A. § 9543(a)(2). Further, these issues must be neither previously litigated nor waived. 42 Pa.C.S.A. § 9543(a)(3).

Where the PCRA court has dismissed a petitioner's petition without an evidentiary hearing, as is the case here, we review the PCRA court's decision for an abuse of discretion. **See Commonwealth v. Roney**, 79 A.3d 595, 604 (Pa. 2013), **cert. denied**, ___ U.S. ___, 135 S.Ct. 56 (2014) (citation omitted). Moreover,

> the right to an evidentiary hearing on a post-conviction petition is not absolute. It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous

and has no support either in the record or other evidence. It is the responsibility of the reviewing court on appeal to examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing.

*Commonwealth v. Wah*, 42 A.3d 335, 338 (Pa.Super. 2012) (internal citations omitted).

Instantly, all four of appellant's claims challenge the effectiveness of his trial counsel. To prevail on a claim of ineffective assistance of counsel under the PCRA, a petitioner must plead and prove by a preponderance of the evidence that counsel's ineffectiveness "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii). Specifically, a petitioner must establish the following three factors:

first the underlying claim has arguable merit; second, that counsel had no reasonable basis for his action or inaction; and third, that Appellant was prejudiced.

*Commonwealth v. Charleston*, 94 A.3d 1012, 1020 (Pa.Super. 2014), *appeal denied*, 104 A.3d 523 (Pa. 2014) (citation omitted). "A petitioner establishes prejudice when he demonstrates that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Commonwealth v. Johnson*, 966 A.2d 523, 533 (Pa. 2009) (citations and internal quotation marks omitted).

"[C]ounsel is presumed to be effective and the burden of demonstrating ineffectiveness rests on appellant." ***Commonwealth v. Ousley***, 21 A.3d 1238, 1242 (Pa.Super. 2011), ***appeal denied***, 30 A.3d 487 (Pa. 2011) (citation omitted). Additionally, we note that counsel cannot be found ineffective for failing to raise a claim that is devoid of merit. ***See***, ***e.g.***, ***Commonwealth v. Ligons***, 971 A.2d 1125, 1146 (Pa. 2009).

In his first issue, appellant contends that his trial counsel was ineffective in failing to object to the trial court's "incomprehensible" jury instruction on accomplice liability for first-degree murder. (Appellant's brief at 9-10, 14-19.) Appellant further argues that this erroneous instruction permitted "the jury to infer the intent to kill on the part of the accomplice merely because the shooter used a deadly weapon on a vital part of the decedent's body." (***Id.*** at 12.) We disagree.

Preliminarily, we note that,

> when evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper. We further note that, it is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error.

***Commonwealth v. Antidormi***, 84 A.3d 736, 754 (Pa.Super. 2014), ***appeal denied***, 95 A.3d 275 (Pa. 2014) (citations and bracket omitted).

Here, the record reflects that during appellant's trial, the trial court instructed the jury at great length on the concept of accomplice liability as it relates to first-degree murder and later clarified its instructions to the jury.[4] (**See** notes of testimony, 9/18/07 at 24-28, 32-34, 39-44, 64-65, 94-100.) On direct appeal, a panel of this court reviewed appellant's challenge to the accomplice liability instruction and concluded that it was entirely proper. **See Commonwealth v. Oliphant**, 987 A.2d 821 (Pa.Super. 2009), **appeal denied**, 608 Pa. 620 (Pa. 2010) (unpublished memorandum at 7-8).

In reaching this decision, this court reasoned that,

> **[w]ith respect to the accomplice liability instruction, the record makes clear [a]ppellant was the principal shooter in the crime. The jury instructions as a whole make clear the [trial] court's discussion of accomplice liability expressly referred to [appellant's co-defendant, Ronald] Bethea.** Moreover, the jury convicted [a]ppellant as the principal and not as an accomplice. Thus, the jury instructions did not prejudice [a]ppellant, and his issue merits no relief.

**Id.** (citation omitted; emphasis added).

Upon review, we agree that the trial court's jury instructions, when read as a whole, clearly and accurately conveyed the applicable law with respect to accomplice liability and first-degree murder. Contrary to appellant's assertions, the trial court's instructions did not "authoriz[e] the

---

[4] Although the accomplice liability charge was addressed on direct appeal, to the extent that appellant's claim differs to some degree from that previously addressed by this court, we will review the claim.

jury to find [a]ppellant guilty either as the principal or an accomplice." (Appellant's brief at 12.) Accordingly, as there was no basis for trial counsel to object, appellant's ineffectiveness claim must fail. *See Commonwealth v. Rivera*, 816 A.2d 282, 292 (Pa.Super. 2003), *appeal denied*, 28 A.2d 350 (Pa. 2003) (stating, "it is axiomatic that . . . counsel will not be considered ineffective for failing to pursue meritless claims."); *Commonwealth v. Clark*, 961 A.2d 80, 93 (Pa. 2008), *cert. denied*, 558 U.S. 1082 (2009) (holding that trial counsel cannot be ineffective for failing to raise a claim that is without merit).

Appellant further argues, albeit parenthetically, that his appellate counsel was also ineffective in failing to preserve this claim on direct appeal. (Appellant's brief at 19-20.) As noted, however, appellant has failed to adequately demonstrate that his claim of trial counsel's purported ineffectiveness was of arguable merit, and thus, it logically follows that appellate counsel cannot be deemed to be ineffective in this regard. Our supreme court has recognized that "a determination that [] trial counsel . . . rendered ineffective assistance is a prerequisite to finding that [any subsequent counsel] . . . was ineffective." *See Commonwealth v. McGill*, 832 A.2d 1014, 1024-1025 (Pa. 2003).

In his second issue, appellant argues that his trial counsel was ineffective in failing to object to the trial court's instruction to the jury that it should not infer anything from the fact that the Commonwealth never called

Donzell White to testify at trial. (Appellant's brief at 21.) Appellant avers that the trial court's instructions prevented the jury from considering the possibility that "[Donzell] White was the real shooter" and that his absence could be used in "its assessment of the Commonwealth's case[.]" (*Id.* at 22-23.) We disagree.[5]

The record reflects that Donzell White testified at the preliminary hearing that he was in a vehicle with appellant and co-defendant, Ronald Bethea, the evening of the shooting and provided statements implicating appellant in the crime. At trial, the Commonwealth elected not to call Donzell White as a witness and made him available to appellant. (Notes of testimony, 9/14/07 at 15.) Appellant's counsel indicated that calling Donzell White would prove adverse to appellant's case and made the strategic decision not to call him as a witness. Specifically, appellant's counsel stated as follows:

> I was not suggesting to call [Donzell White]. I wasn't intending to call him. It would be a suicide mission. They would put me in the hall of shame if I called him.

*Id.* at 16.

Thereafter, during deliberation, the jury inquired if they were permitted to infer that Donzell White was granted immunity by the fact that

---

[5] To the extent that appellant suggests that an adverse inference instruction should have been given, the Commonwealth is correct that such an instruction is not applicable if the witness is available to both sides.

he was not charged with any crime and did not testify. (Notes of testimony, 9/18/07 at 109, 124-125.) The jury also inquired as to whether it could infer anything from Donzell White's absence in regard to reasonable doubt. (*Id.*) Following argument by counsel, the trial court instructed the jury at length that it must not to infer anything from the fact that White did not testify.

> There has been no evidence whatsoever other than a question put forth about immunity. So there is no evidence in this trial concerning immunity as it related to Donzell White.
>
> The fact that Donzell White did not appear here and give testimony is of no moment. In fact, Donzell White was a person who was available to be called as a witness by the prosecution and by either of the defendants. He was not called, as were a lot of people who may have been involved in this particular case who were not called. And just like those other people who were not listed on that long, lengthy list, you did not hear any evidence about anything related to Donzell White as it relates to immunity or certain other issues.
>
> There was evidence about Donzell White. And I am not telling you [that] you have to exclude that, because, clearly, there was evidence about his presence and other matters. You will recall all of the evidence that was admissible and admitted with respect to Donzell White.
>
> I am telling you, you must disregard totally in carrying out your deliberations on any verdict on any charge anything pertaining to immunity as it related to Donzell White or from the fact that he did not testify here at this trial.

> And the second part of the question is: Can we infer anything from [Donzell White's] absence in regard to reasonable doubt?
>
> I am going to answer that simply the same way I answered, that all of those other witnesses whose names I read out and they were not called as witnesses and did not give testimony -- there was perhaps some references or testimony to them, but you are not similarly able to infer anything because they were not called to testify at trial.
>
> Same thing with Donzell White. It is not evidence except insofar as you heard the testimony with respect to Donzell White that was admitted. Okay?

*Id.* at 125-127.

Upon review, we conclude that appellant's trial counsel had a reasonable basis not to object to the trial court's instruction, as the jury was fully aware that Donzell White was available to be called by the defense, and his absence at trial did not affect the jury's ability to speculate that he was the shooter. As noted, appellant's trial counsel declined to call Donzell White at trial, recognizing that his identification of appellant as the shooter would have certainly damaged "[t]he defense theory that White and not [a]ppellant was the shooter." (Appellant's brief at 23.)

> [Our Supreme] Court has recognized that counsel are not constitutionally required to forward any and all possible objections at trial, and the decision of when to interrupt oftentimes is a function of overall defense strategy being brought to bear upon issues which arise unexpectedly at trial and require split-second decision-making by counsel.

***Charleston***, 94 A.3d at 1020 (citation omitted). "[W]here matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests." ***Commonwealth v. Hammond***, 953 A.2d 544, 558 (Pa.Super. 2008), ***appeal denied***, 964 A.2d 894 (Pa. 2009) (citations omitted). Based on the foregoing, we conclude that appellant is not entitled to relief on this ineffectiveness claim. ***See Commonwealth v. Williams***, 899 A.2d 1060, 1064 (Pa. 2006) (stating, "[i]f counsel's chosen course had some reasonable basis, the inquiry ends and counsel's assistance is deemed effective.").

Appellant next argues that his trial counsel was ineffective in failing to challenge various comments the prosecutor made during his closing argument that referenced "[a]pellant's prior threats of violence" towards Chaka Jenkins. (Appellant's brief at 25.)

At trial, Assistant District Attorney Jude Conroy ("ADA Conroy") questioned Chaka Jenkins with regards to a statement she gave to police that indicated that she "was afraid" of appellant because he had previously threatened to kill her if she ever cheated on co-defendant Ronald Bethea, her boyfriend at the time. (***See*** notes of testimony, 9/12/07 at 276-277.) Jenkins was uncooperative on the stand and testified that she did not recall the details of the murder or giving said statement to police. (***Id.***) The Commonwealth also elicited testimony from Detective Levi Morton, who

indicated that he spoke to Chaka Jenkins a couple months after the murder and that she had expressed similar concerns. (Notes of testimony, 9/17/07 at 52-53.)

Thereafter, ADA Conroy referenced this testimony during his closing statement, arguing to the jury that Chaka Jenkins was unwilling to implicate appellant and co-defendant Ronald Bethea at trial because she feared them. Specifically, ADA Conroy made the following comments which appellant now challenges on appeal:

> But you have to recognize, ladies and gentlemen, as Detective Morton did when he spoke to [Chaka Jenkins], it is not an easy thing to come into a room and testify about a matter as violent and brutal as the taking of [the victim's] life without being scared. She didn't want to be here. She was scared. And despite whatever attitudes she had on the stand, it wasn't an easy thing to come into this courtroom, a public courtroom, and testify. So you have to keep that in mind when you evaluate this woman's testimony.
>
> But that doesn't relieve the Commonwealth of its obligation. I submit to you that you look at what she said to Detective Morton; why she was scared; that this man had two personalities, the defendant Ronald Bethea. [Appellant] threatened to kill her if she cheated on Ronald Bethea.
>
> Do you think that's a stretch? Do you think maybe they really said this, now that you've had a chance to see their handy work [sic]? (indicating)
>
> Do you think that's really a stretch to keep your mouth shut? Do you think it is really a stretch what they did to [the victim], walking down the street going to get Chinese food? Do you really think it is a stretch?

*Id.* at 227-229.

Appellant argues that the prosecutor's reference to this testimony constituted prosecutorial misconduct and his trial counsel's failure to object on this basis entitles him to a new trial. (Appellant's brief at 25-26, 31-32.) Appellant further avers that, "this evidence was only admissible . . . to explain why Jenkins was reluctant to implicate [a]ppellant," and that his trial counsel, at the very least, should have requested a cautionary instruction that the jury should only consider it for that limited purpose. (*Id.* at 25-26.) We disagree.

"Our standard of review for a claim of prosecutorial misconduct is limited to whether the trial court abused its discretion." *Commonwealth v. Harris*, 884 A.2d 920, 927 (Pa.Super. 2005), *appeal denied*, 928 A.2d 1289 (Pa. 2007) (citations omitted). Not every unwise remark on a prosecutor's part, however, constitutes reversible error. *Id.* "Prosecutorial misconduct occurs when the effect of the prosecutor's comments would be to prejudice the trier of fact, forming in its mind fixed bias and hostility toward the defendant so that it could not weigh the evidence objectively and render a true verdict." *Commonwealth v. Duffy*, 832 A.2d 1132, 1137 (Pa.Super. 2003), *appeal denied*, 845 A.2d 816 (Pa. 2004).

> Counsels' remarks to the jury may contain fair deductions and legitimate inferences from the evidence presented during the testimony. The prosecutor may always argue to the jury that the evidence establishes the defendant's guilt, although

a prosecutor may not offer his personal opinion as to the guilt of the accused either in argument or in testimony from the witness stand. Nor may he or she express a personal belief and opinion as to the truth or falsity of evidence of defendant's guilt, including the credibility of a witness.

*Commonwealth v. Chmiel*, 777 A.2d 459, 466 (Pa.Super. 2001), *appeal denied*, 788 A.2d 372 (Pa. 2001).

Following our careful review, we conclude that ADA Conroy's comments, when read as a whole, did not warrant that a new trial be granted or that a specific cautionary instruction be given to the jury. "[A] prosecutor is permitted fairly wide latitude in advocating for the Commonwealth, including the right to argue all fair conclusions from the evidence, to respond to defense arguments, and to engage in a certain degree of oratorical flair." *Harris*, 884 A.2d at 931. All such comments must be reviewed in the context in which they were made. *Commonwealth v. Robinson*, 877 A.2d 433, 441 (Pa. 2005). Moreover, we note that,

a trial court should not instruct the jury on legal principles which have no application to the facts presented at trial. Rather, there must be some relationship between the evidence presented and the law upon which an instruction is requested.

*Commonwealth v. Taylor*, 876 A.2d 916, 925-926 (Pa. 2005) (citations and internal quotation marks omitted).

Here, the record reflects that ADA Conroy's comments were properly made in response to defense counsel's argument as to why Chaka Jenkins

was not a credible witness. Specifically, during his summation, Attorney Gamburg made the following argument to the jury:

> [Chaka Jenkins] is not afraid of [appellant]. [Appellant] means nothing to her. She doesn't even remember how long she knew him. She knew him from [Ronald] Bethea. She doesn't mean a thing to [appellant].
>
> . . . .
>
> Chaka Jenkins is not worthy of any belief . . . She lied in front of you. And she talked her way out of a murder case.

Notes of testimony, 9/17/07 at 183, 185.

The record further reflects that ADA Conroy's comments were made with a permissible degree of oratorical flair and were not the kind of comments that would cause the jury to form a fixed bias or hostility towards appellant and prevent it from properly weighing the evidence and rendering a fair and impartial verdict. Accordingly, appellant's trial counsel had no basis upon which to object or request a cautionary instruction, and appellant's underlying ineffectiveness claim must fail. *See Rivera*, 816 A.2d at 292 (stating, "it is axiomatic that . . . counsel will not be considered ineffective for failing to pursue meritless claims.").

Lastly, appellant argues his trial counsel was ineffective in failing to object to the prosecutor's closing argument on the basis that it improperly vouched for Commonwealth witness Chaka Jenkins and attempted to bolster

her credibility. (Appellant's brief at 32, 38.) Specifically, appellant challenges the following comments made by ADA Conroy:

> Do you really believe in your heart of hearts that Chaka Jenkins was the mastermind behind this? You have to look at their involvement and what they were given, their corroboration [and] what deal I gave them for their cooperation.

> Did she seem like a cooperative witness to me? Did she appear to be a cooperative witness to the Commonwealth? Are you kidding me? It was like pulling teeth. I thought I went to law school, not dental school. I was extracting evidence from her.

> This is what I am talking about. Apply your common sense. Is she cooperative? Is she in my pocket? Whose pocket is she in? Who is controlling her? Who has the influence over her?

> Now, see, that's common sense. Apply what they said. Listen to what they said and how they said it and what I gave her.

> It is true. She wasn't charged with an offense. If you want to hold that against me, you write a letter to Lynne Abraham and say, "Mr. Conroy is not doing his job. He is not charging everyone involved here."

> Ladies and gentlemen, they all shared a responsibility in the death of [the victim]. They all should be charged. But we need witnesses. We need people to come in and tell us what to do, what happened, what the facts are. We can't charge everyone. And to that extent, you hold that against me. Really, complain if you think it is inappropriate. But we have to make tough calls about who should be charged and who shouldn't.

> And we have to look at all the evidence, to the totality of the circumstances.

> And you apply your common sense to what you heard in this courtroom. Do you really in the heart of your hearts think she was the quarterback, the Peyton Manning or the Donovan McNabb of this team?

Notes of testimony, 9/17/07 at 216-217.

"Improper bolstering or vouching for a government witness occurs where the prosecutor assures the jury that the witness is credible, and such assurance is based on either the prosecutor's personal knowledge or other information not contained in the record." *Commonwealth v. Chmiel*, 30 A.3d 1111, 1180 (Pa. 2011) (citation omitted).

> The prosecution may not inject a highly prejudicial personal opinion of [an] appellant's credibility into evidence, thereby clearly and improperly intruding upon the jury's exclusive function of evaluating the credibility of witnesses. However, as long as a prosecutor does not assert his personal opinions, he or she may, within reasonable limits, comment on the credibility of a Commonwealth witness. This is especially true when the credibility of the witness has been previously attacked by the defense. This stems from the general principle that the prosecutor is permitted to respond to the arguments of the defense and is free to present his or her case with logical force and vigor.

*Commonwealth v. Tedford*, 960 A.2d 1, 31-32 (Pa. 2008) (citations and internal quotation marks omitted).

Instantly, our review of the record reveals that appellant's trial counsel had no reasonable basis to object to ADA Conroy's comments. The record reflects that ADA Conroy did not improperly vouch for the credibility of Chaka Jenkins, nor inject a personal opinion on her particular credibility.

Rather, it is apparent from our review of the record that ADA Conroy's comments were made in response to a suggestion by Attorney Brian J. McMonagle, co-defendant Bethea's trial counsel, that it was improper that Chaka Jenkins was not charged by the Commonwealth in this case. (*See* notes of testimony, 9/17/07 at 193-194.) As discussed, "a prosecutor is permitted fairly wide latitude in advocating for the Commonwealth, including the right . . . to respond to defense arguments. . . ." *Harris*, 884 A.2d at 931. Accordingly, appellant's trial counsel was not ineffective for failing to object on the basis of this meritless vouching claim. *See Rivera*, 816 A.2d at 292 (stating, "it is axiomatic that . . . counsel will not be considered ineffective for failing to pursue meritless claims.").

For all the foregoing reasons, we affirm the May 12, 2015 order of the PCRA court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/18/2016

- 21 -