J-S42040-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JEROD ALAN GREEN, | : | |
| | : | |
| Appellant | : | No. 219 WDA 2014 |

Appeal from the Judgment of Sentence entered on February 25, 2013
in the Court of Common Pleas of Greene County,
Criminal Division, No. CP-30-CR-0000127-2012

BEFORE:  PANELLA, JENKINS and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:　　　　　　**FILED AUGUST 11, 2014**

Jerod Alan Green ("Green") appeals from the judgment of sentence entered following his conviction of two counts of driving under the influence ("DUI") (fourth or subsequent offense), and one count each of third-degree murder, fleeing or attempting to elude a police officer, homicide by vehicle (DUI),[1] homicide by vehicle[2] (while committing the offense(s) of (a) fleeing or attempting to elude police officer; (b) driving at safe speed, 75 Pa.C.S.A. § 3761; (c) driving on roadways laned for traffic, *see id.* § 3309; and/or (d) duty of driver in emergency response areas, *see id.* § 3327), and

---

[1] *See* 75 Pa.C.S.A. § 3802(a)(1), (c); 18 Pa.C.S.A. § 2502(c); 75 Pa.C.S.A. §§ 3733 and (c), 3735.

[2] 75 Pa.C.S.A. § 3732.

related summary offenses.[3]  We affirm.

In the early morning hours of February 18, 2012, on Easton Hill near Morgantown, West Virginia, a truck struck Skylar Johnson's ("Johnson") Toyota Corolla, but did not stop.  An ambulance responded to the scene, but Johnson declined treatment.

While driving through Morgantown at approximately 1:00 a.m., Kyle Crace ("Crace") observed a full-sized truck, with extensive damage, traveling in the same direction as Crace's vehicle.  The truck was traveling at a high rate of speed and appeared erratic.  Crace closed the distance between the two vehicles and obtained the truck's license plate number.  Upon arriving home, Crace telephoned this information to police.

On February 18, 2012, Sergeant James Burks ("Sergeant Burks") responded to the Johnson accident scene.  Upon the arrival of a West Virginia State Trooper, Sergeant Burks drove off in search of the truck that struck Johnson's vehicle.  Shortly thereafter, Sergeant Burks received a dispatch describing a truck, with a possibly intoxicated driver, near Granville, West Virginia.  A Granville police officer effectuated a stop of that truck.  Monongalia County Sheriff's Deputy David Wilfong ("Deputy Wilfong") advised that he also would report to the location of the stopped truck.[4]

---

[3] 75 Pa.C.S.A. §§ 101 *et seq*.

[4] The Monongalia Sheriff's Department has county-wide jurisdiction.

Sergeant Burks arrived at the scene of the traffic stop and observed that the truck, operated by Green, had damage to the front end and passenger side.

Green told the officers that, after leaving a Ruby Tuesday's restaurant, he traveled to Easton Hill, where, he claimed, his truck was struck by another vehicle. Green explained that he did not stay at the accident scene because he had four prior DUIs. As Sergeant Burks walked away to speak with other officers at the scene, and while Deputy Wilfong's arm was inside of the truck window, Green drove away. The officers at the scene pursued Green's vehicle. After approximately one mile, Sergeant Burks radioed his intention to pull in front of the Granville police units, as his department had primary jurisdiction. Subsequently, a Granville police officer was directed to "stand down," as the pursuit had departed from Granville's jurisdiction.

As the pursuit continued, Green's vehicle traveled at speeds from 20 to 60 miles per hour. After avoiding rolling and stationary police road blocks, the pursuit continued onto Interstate 79 ("I-79") and into Pennsylvania. Green entered Mt. Morris in Greene County, Pennsylvania. Sergeant Burks testified regarding what next transpired:

> I observed a police vehicle, it appeared to be a[n] SUV. The emergency light bar on top of the car was working. It had wig-wag headlights. It was evident it was a police vehicle, and based on the radio traffic[,] I knew it to be Sergeant [Michael] May [of the Sheriff's Office of Monongalia County, West Virginia ("Sergeant May")] …. [I]t appeared that he was towards the rumble strips along the left-hand side of the northbound lanes basically turning into the median, and then coming across the median at an angle…. We got to the top of the entrance ramp … [and Green] made a straight line --- he c[a]me diagonally from

- 3 -

the right-hand side of the road to the left-hand side of the road across all the lanes … and drove straight into Sergeant May's vehicle… I saw [] Green's vehicle hit [Sergeant] May's vehicle, which caused … [Sergeant] May's vehicle to spin violently.

N.T., 12/10-13/12, at 151-54. Sergeant May died as a result of brain injuries sustained in the crash.

Pennsylvania State Trooper Joseph Popielarcheck ("Trooper Popielarcheck") arrived at the crash scene at 1:40 a.m. Because Green appeared intoxicated, he was taken to the hospital to obtain a blood sample. The hospital drew the blood sample at 3:03 a.m.[5] Green was placed under arrest in Greene County, Pennsylvania.

Green filed a pre-trial suppression Motion, which the trial court denied. After a trial, the jury found Green guilty of the above-described charges. Thereafter, the trial court sentenced Green to an aggregate prison term of 25-50 years. Green filed a post-sentence Motion, which the trial court denied. Thereafter, Green filed the instant timely appeal.

Green presents the following claims for our review:

I.     Whether the Commonwealth produced sufficient evidence to prove beyond a reasonable doubt [that Green] is guilty of third[-]degree murder, homicide by vehi[cl]e, [and] homicide by vehi[cl]e, while driving under the influence, and duty of drivers in an emergency zone?

II.    Whether the trial court erred in allowing evid[en]ce to be int[r]oduced where the prejudicial value greatly outweighed the relevant value, specifically[,] the testimony of Franklin May, a picture of the victim with his father, and two autopsy photo[]s?

---

[5] Green's blood alcohol content was determined to be 0.189%.

- 4 -

III. Whether the trial court erred in denying [Green's] Motion to Suppress, without a hearing, based on Sergeant May's use of deadly force?

IV. Whether the trial court erred in denying [Green's] Motion to Suppress based on Sergeant May being outside his jurisdiction and not in hot pursuit, thereby illegal[ly] seizing [Green]?

V. Whether the trial court erred in not suppressing a recording of [Green] conducted in violation of Pennsylv[a]nia[']s Wiretap Law?

VI. Whether the trial court erred in not suppressing [Green's] blood alcohol results that were obtained in violation of [Green's] *Miranda*[6] rights?

VII. Whether the trial court erred in not suppressing search warrants that sought electronically stored data as overbroad?

VIII. Whether the trial court erred in allowing the introduction of [Green's] prior [DUI] convictions?

IX. Whether the trial court erred in rendering its opinion that Sergeant May was in an emergency response area?

Brief for Appellant at 14 (footnote added).

Green first challenges the sufficiency of the evidence underlying his convictions of third-degree murder, homicide by vehicle, homicide by vehicle (DUI) and duty to emergency vehicles. *Id.* at 22. As to his conviction of third-degree murder, Green argues that the Commonwealth failed to prove causation and that he had the requisite *mens rea*. *Id.* According to Green, the Commonwealth failed to prove that he acted with malice, as there was

---

[6] *Miranda v. Arizona*, 384 U.S. 436 (1966).

no traffic on the roadway, and when the police left him with an avenue of escape, he took it. *Id.* at 27. Green contends that he accelerated his vehicle to a speed of 98 miles per hour on a straight and unoccupied portion of I-79 for only 2.5 seconds. *Id.*

Green also contends that the Commonwealth failed to prove that he caused Sergeant May's death. Green asserts that Sergeant May's violations of police training and procedure, as well as his violations of Pennsylvania and West Virginia law, caused his death. *Id.* at 25. Green claims that the evidence demonstrated that Sergeant May drove his vehicle into the path of Green's vehicle. *Id.* Green contends that Sergeant May should have stopped in the median, and that his failure to do so violated 75 Pa.C.S.A. § 3105(e), which states that a driver of an emergency vehicle is not relieved of his duty of safety and care to all persons. Brief for Appellant at 26. Had Sergeant May followed proper police procedures, Green argues, the accident would not have occurred. *Id.* Finally, Green claims that the Commonwealth failed to prove that he was in an "emergency response area," which is necessary to establish his violation of 75 Pa.C.S.A. § 3327(a)(1). Brief for Appellant at 22, 27-28.

In reviewing a challenge to the sufficiency of the evidence, we evaluate the record "in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the

evidence." ***Commonwealth v. Bibbs***, 970 A.2d 440, 445 (Pa. Super. 2009) (citation omitted).

> Evidence will be deemed sufficient to support the verdict when it established each element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty, and may sustain its burden by means of wholly circumstantial evidence. Significantly, [we] may not substitute [our] judgment for that of the factfinder; if the record contains support for the convictions they may not be disturbed.

***Id.*** (citation and quotation marks omitted). "Any doubt about the defendant's guilt is to be resolved by the factfinder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." ***Commonwealth v. Scott***, 967 A.2d 995, 998 (Pa. Super. 2009).

Regarding third-degree murder, the Crime Code provides as follows: "All other kinds of murder shall be murder of the third degree." 18 Pa.C.S.A. § 2502(c). Our Pennsylvania Supreme Court has explained that,

> [t]o convict a defendant of the offense of third-degree murder, the Commonwealth need only prove that the defendant killed another person with malice aforethought. This Court has long held that malice comprehends not only a particular ill-will, but [also a] wickedness of disposition, hardness of heart, **recklessness of consequences**, and a mind regardless of social duty, although a particular person may not be intended to be injured.

***Commonwealth v. Fisher***, 80 A.3d 1186, 1191 (Pa. 2013) (emphasis added, citation omitted).

> Malice has been characterized as exhibiting an "extreme indifference to human life," ***Commonwealth v. Gardner***, 490

- 7 -

Pa. 421, 416 A.2d 1007, 1008 (Pa. 1980) … , and "may be found to exist not only in an intentional killing, but also in an unintentional homicide where the perpetrator 'consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily harm.'" *Commonwealth v. Young*, 494 Pa. 224, 431 A.2d 230, 232 (Pa. 1981) (quoting *Commonwealth v. Hare*, 486 Pa. 123, 404 A.2d 388, 391 (Pa. 1979)).

*Commonwealth v. Ludwig*, 874 A.2d 623, 632 (Pa. 2005) (emphasis omitted).

In *Commonwealth v. Spotti*, 2014 PA LEXIS 114, this Court explained the two-part test for determining criminal causation:

First, the defendant's conduct must be an antecedent, but for which the result in question would not have occurred. A victim's death cannot be entirely attributable to other factors; rather, there must exist a causal connection between the conduct and the result of conduct; and causal connection requires something more than mere coincidence as to time and place. Second, the results of the defendant's actions cannot be so extraordinarily remote or attenuated that it would be unfair to hold the defendant criminally responsible.

*Id.* at *48 (citations and quotation marks omitted).

At trial, the Commonwealth presented the testimony of Sergeant Burks, who described his pursuit of Green's vehicle as follows:

[Green] … would travel from the berm of the right-had side of the road into oncoming—into the oncoming lane, on to the berm of the left-hand side of the road, and back and forth. It was—he was very erratic.

N.T., 12/10-13/12, at 145. Sergeant Burks further testified that,

[a]t one point[,] it got to the point where I determined that it was no longer safe for me or the units behind me, so I pulled to the right—as close to the right side of the road as possible, and [] Green passed me again on the left side. **As he passed me,**

- 8 -

**the rear of his vehicle got to the front of my cruiser, he slammed on his breaks and cut his wheel hard to the right, which caused me to have to slam on my brakes and go off the road to keep from being struck**….

*Id.* at 147 (emphasis added).  Sergeant Burks described Green's driving as "aggressive," and urged responding police units to use caution.  *Id.* at 146.

As he pursued Green on Route 19, Sergeant Burks testified, Green approached a bridge that, because of construction, was reduced to one lane. *Id.* at 150.  Sergeant Burks stated that,

> [p]rior to getting to [the bridge,] []Green slammed on his brakes again, as he was moving over to go through the single lane[,] slammed on his brakes and cut his wheel hard again[,] almost striking my vehicle to a point where I had to go off the road a second time to avoid being hit….

*Id.*

After entering Pennsylvania, Green proceeded to the entrance ramp of the southbound lanes of I-79.  *Id.* at 151.  Sergeant Burks observed that Sergeant May had parked his vehicle, with emergency lights activated, in the median.  *Id.*  Sergeant May's vehicle was parked "with the front of his vehicle close to the rumble strips along the berm closest to the median." *Id.* at 165.  Sergeant Burks testified that Sergeant May's vehicle stopped short of being in any lane of traffic.  *Id.*

Star City Police Lieutenant Thomas Varndell ("Lieutenant Varndell") testified that he observed Green enter southbound I-79.  *Id.* at 193.  As Green turned onto I-79, Lieutenant Varndell heard Green's engine "rev," and

observed that Green's vehicle "accelerated hard." *Id.* Lieutenant Varndell

described what next transpired as follows:

> As I was cresting [the hill on the] entrance ramp, … I could see
> off in the distance a set of emergency lights coming northbound
> on I-79…. At that time I seen [*sic*] the emergency vehicle going
> into the median. Then start to turn to a 90-degree angle—in the
> median. Then I observed the [truck] went from the entrance
> ramp to the slow lane and then with another maneuver went to
> the fast lane.

*Id.* at 194. Similarly, Sergeant Burks testified that when Green entered the

southbound lanes of I-79, he drove diagonally from the right-hand side of

the road to the left-hand side of the road, across both travel lanes. *Id.* at

153. Without braking, Green drove his vehicle directly into Sergeant May's

vehicle. *Id.* at 152-53. Green did not attempt to avoid Sergeant May's

vehicle. *Id.* at 154.

"[O]ur courts have consistently held that malice is present under

circumstances where a defendant did not have an intent to kill, but

nevertheless displayed a conscious disregard for an unjustified and

extremely high risk that his actions might cause death or serious bodily

harm." *Commonwealth v. Santos*, 876 A.2d 360, 364 (Pa. 2005) (internal

quotation marks and citation omitted). Upon our review, the above-stated

evidence is sufficient to demonstrate that Green consciously disregarded an

unjustified and extremely high risk that his actions might cause death or

serious bodily injury. *See id.* As such, we conclude that the evidence is

sufficient to sustain Green's conviction of third-degree murder.

We further conclude that the Commonwealth's evidence is sufficient to establish criminal causation. Contrary to Green's assertion, Sergeant May's death was not "entirely attributable to other factors." The evidence demonstrated a causal connection between Green's continuous flight from police officers, while intoxicated, at high speeds and in violation of multiple Motor Vehicle Code provisions, and Green's crashing of his vehicle into the police vehicle of Sergeant May, while the vehicle's emergency lights were activated, resulting in Sergeant May's death. Further, the evidence is sufficient to establish that the causal connection between Green's actions and Sergeant May's death is not mere coincidence as to time and place. Although Green argues that Sergeant May drove his vehicle into the path of Green's vehicle, and challenged whether Sergeant May followed appropriate police procedures, the jury, by its verdict, did not credit the defense theory and evidence. We cannot substitute our judgment for that of the jury, as the trier of fact. **Commonwealth v. Manley**, 985 A.2d 256, 262 (Pa. Super. 2009); **see also Commonwealth v. Toland**, 995 A.2d 1242, 1245 (Pa. Super. 2010) (stating that the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence).

The evidence further is sufficient to sustain Green's conviction of homicide by vehicle. The Motor Vehicle Code defines homicide by vehicle as follows:

Any person who recklessly or with gross negligence causes the death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic except section 3802 (relating to driving under influence of alcohol or controlled substance) is guilty of homicide by vehicle, a felony of the third degree, when the violation is the cause of death.

75 Pa.C.S.A. § 3732(a). Here, Green's reckless conduct, as described above, while committing multiple violations of the Motor Vehicle Code,[7] is sufficient to sustain his conviction.

The evidence also is sufficient to sustain Green's conviction of homicide by vehicle while violating section 3327(a) of the Motor Vehicle Code. Section 3327(a) provides that,

[w]hen approaching or passing an emergency response area, a person, unless otherwise directed by an emergency service responder, shall:

(1) pass in a lane not adjacent to that of the emergency response area, if possible; or

(2) if passing in a nonadjacent lane is impossible, illegal or unsafe, pass the emergency response area at a careful and prudent reduced speed reasonable for safely passing the emergency response area.

75 Pa.C.S.A. § 3327(a). An "emergency response area" is defined by statute as

the area in which emergency service responders render emergency assistance to individuals on or near a roadway or a

---

[7] **See, e.g.**, 75 Pa.C.S.A. §§ 3733 (fleeing or attempting to elude police officer), 3761 (driving at safe speed), 3309 (driving on roadways laned for traffic).

police officer is conducting a traffic stop or systematic check of vehicles or controlling or directing traffic as long as the emergency vehicle is making use of visual signals meeting the requirements of Subchapter D of Chapter 45.

*Id.* § 3327(f) (footnote omitted).[8]  The statute provides that

[a]n emergency response area shall be clearly marked with road flares, caution signs or any other traffic-control device which law enforcement officials may have at their immediate disposal **or visual signals on vehicles** meeting the requirements of subchapter D of Chapter 45 (relating to equipment of authorized emergency vehicles).

*Id.* § 3327(c) (emphasis added).

Sergeant Burks testified at trial that as Green approached the entrance ramps to I-79,

[Green] turned right and [] onto the I-79 southbound entrance ramp, and as soon as he turned right[,] he sped up.  That was evident, you could hear the roar of his engine, visually see him speeding up, at which time I did the same.  As we went up the entrance ramp, I would estimate I was two to three car lengths behind him.

…

When you start on the entrance ramp[,] it's an uphill grade….  As you progress up the entrance ramp closer to the top, then you're able to see the southbound lanes as well as the northbound lanes coming from West Virginia in to Pennsylvania.

…

I observed a police vehicle, it appeared to be a[n] SUV.  The emergency light bar on the top of the car was working.  It had

_____

[8] Chapter 45 outlines the appropriate visual signals for police as one or more flashing or revolving red lights or a combination of red and blue lights.  75 Pa.C.S.A. § 4571(a)-(b).  Green did not contest that the lights on Sergeant May's vehicle met the requirements of Subchapter D of Chapter 45.

wig-wag headlights. It was evident it was a police vehicle, and based on the radio traffic I knew it to be Sergeant May.

N.T., 12/10-13/12, at 151-52. Sergeant Burks testified that that Sergeant May's vehicle had a strobe light bar on the roof of his cruiser and "wig-wag" headlights, all of which were activated. *Id.* at 152-53. Even though there were no vehicles in the right lane, upon entering I-79, Green's vehicle crossed from the slow lane to the fast lane, and then drove straight into Sergeant May's vehicle. *Id.* at 153.

Lieutenant Varndell testified regarding the events immediately preceding the collision:

As I was cresting the entrance ramp, it has a slight incline, and as I was cresting the peak of the incline[,] I could see off in the distance a set of emergency lights coming northbound on I-79. At the time that the—which later turned out to be a sheriff's department vehicle from Mon[ongalia] County. At that time[,] I seen [*sic*] the emergency vehicle going into the median. Then start to turn to a 90-degree angle—in the median. Then I observed the [truck] went from the entrance ramp to the slow lane and then with another maneuver went to the fast lane.

*Id.* at 194. On cross-examination, Lieutenant Varndell stated that, when he last observed Sergeant May's vehicle, it was rolling to a stop in the median. *Id.* at 203. Based upon the foregoing, the Commonwealth's evidence is sufficient to sustain Green's conviction of homicide by vehicle while violating section 3327(a) of the Motor Vehicle Code.

In his second claim of error, Green asserts that the trial court improperly admitted the testimony of Franklin May ("Mr. May"), the brother of Sergeant May. Brief for Appellant at 28. Green also argues that the trial

court erred in allowing the Commonwealth to introduce a photo of the victim and his father, as well as autopsy photos. *Id.*

"Admission of evidence is a matter within the sound discretion of the trial court, and will not be reversed absent a showing that the trial court clearly abused its discretion." *Commonwealth v. Cooper*, 941 A.2d 655, 667 (Pa. 2007). Not merely an error in judgment, an abuse of discretion occurs when "the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence on record." *Id.* (quoting *Commonwealth v. McAleer*, 748 A.2d 670, 673 (Pa. 2000) (citation omitted)).

In its February 26, 2014 Opinion, the trial court explained its ruling regarding the testimony of Mr. May as follows:

> [The trial court] believe[s] this evidence was admissible, first of all, to counteract [defense] counsel's opening statement[,] which suggested that Deputy May's actions that night were reckless and in fact the cause of his own death; and second, to establish some background.

Trial Court Opinion, 2/26/14, at 2 (citation omitted). The record supports the trial court's determination.

The record reflects that the Commonwealth offered Mr. May's testimony to counter the suggestion that Sergeant May intentionally rammed Green's vehicle, or acted recklessly. N.T., 12/10-13/12, at 30-31. Further, the testimony was not inflammatory or prejudicial, nor was the family

photograph of Sergeant May and his father. Thus, we discern no basis upon which to grant Green relief on these arguments.

Green also contends that the trial court improperly admitted autopsy photographs at trial. Brief for Appellant at 31. Green asserts that any probative value was outweighed by the photographs' prejudicial impact, in light of testimony presented by the medical examiner. *Id.*

Green does not identify where, in the record, he preserved this claim for appellate review. Our review of the record discloses that Green did not object to the introduction of the photographs. N.T., 12/10-13/12, at 320-21 (wherein the photographs were admitted without objection by defense counsel). Because Green failed to preserve this claim, we cannot grant him relief.[9] *See* Pa.R.A.P. 302(a) (stating that a claim cannot be raised for the first time on appeal).

In his third claim, Green argues that the trial court erred in dismissing his suppression Motion, which claimed that Sergeant May's "seizure" of him through the use of his police vehicle improperly used excessive force. Brief for Appellant at 32-33. In support, Green asserts that Sergeant May, who was outside of his jurisdiction, was not part of the pursuit and drove his vehicle directly into the path of Green's vehicle. *Id.* at 33. Green contends

---

[9] Even if Green had preserved his claim, we would conclude that it lacks merit, for the reasons stated in the trial court's February 26, 2014 Opinion. *See* Trial Court Opinion, 2/26/14, at 2.

that he was not afforded the opportunity to develop a record, because the trial court improperly dismissed his Motion without a hearing. *Id.*

"The appellate standard of review of suppression rulings is well-settled. This Court is bound by those of the suppression court's factual findings which find support in the record, but we are not bound by the court's conclusions of law." *Commonwealth v. Millner*, 888 A.2d 680, 685 (Pa. 2005); *see also Commonwealth v. Booze*, 953 A.2d 1263, 1269 (Pa. Super. 2008) (stating that "[w]here the record supports findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.") (citation omitted).

In his Motion to Suppress, Green argued that the collision constituted an illegal vehicle stop by Sergeant May. Motion to Suppress, 6/26/12, at ¶¶ 3-7. In the brief accompanying his Motion, Green offered no supporting argument. Although the suppression court did not conduct a hearing on Green's Motion, we discern no abuse of discretion or error of law.

Green's suppression claim regarding the actions of Sergeant May implicated a question of fact, which required the weighing of the evidence as to an ultimate issue in the case. It is the exclusive province of the jury, as fact-finder, to determine the weight of relevant evidence. *Commonwealth v. Mitchell*, 883 A.2d 1096, 1110-11 (Pa. Super. 2005). Here, the jury, as fact-finder, was required to resolve conflicts in the evidence and determine whether Green caused Sergeant May's death, or whether Sergeant May

deliberately drove into the path of Green's vehicle. The jury, by its verdict, did not credit Green's version of the events. We may not substitute our own judgment for that of the jury. *See Cooper*, 941 A.2d at 662 (stating that "[w]e may not substitute our judgment for the jury's, as it is the fact finder's province to weigh the evidence, determine the credibility of witnesses, and believe all, part, or none of the evidence submitted."). As such, Green's claim fails.

In his Statement of Questions Involved, Green lists a fourth claim, which asserts that Sergeant May was outside of his jurisdiction and not in hot pursuit at the time, when he illegally seized Green. Brief for Appellant at 14. However, this issue is not addressed in the Argument section of his brief. Accordingly, Green has abandoned this claim. *See Commonwealth v. Love*, 896 A.2d 1276, 1287 (Pa. Super. 2006) (stating that an appellate court is required to deem abandoned those issues which have been identified on appeal but are unsupported by argument in the brief).

In his fifth claim, Green argues that the trial court improperly applied West Virginia law in determining whether to suppress an audio recording made by Deputy Wilfong. Brief for Appellant at 30-31. Green asserts that Pennsylvania's Wiretap and Electronic Surveillance Act requires the consent of both parties to a recording, *see* 18 Pa.C.S.A. § 5704(2)(ii), while West Virginia's statute requires only one person's consent, *see* W. Va. Code § 62-1d-3(e). Brief for Appellant at 34. Green claims that Pennsylvania law

should apply because Pennsylvania has the most interest in the outcome of the proceeding. *Id.* In support, Green argues that the Commonwealth's purpose in introducing the recording was to prove motive and intent as to the Pennsylvania charges. *Id.* at 35.

The Pennsylvania approach to conflict of law issues varies depending upon whether the laws are procedural or substantive in nature. *Commonwealth v. Houseman*, 986 A.2d 822, 841 (Pa. 2009).

> [W]here a conflict of law arises regarding procedural matters, Pennsylvania will apply its procedural laws when it is the forum state. However, where a conflict exists regarding substantive laws, such as here, Pennsylvania courts take a flexible approach which permits analysis of the policies and interests underlying the particular issue before the court. This approach gives the state having the most interest in the question paramount control over the legal issues arising from a particular factual context, thereby allowing the forum to apply the policy of the jurisdiction most intimately concerned with the outcome.

*Id.* at 841-42 (citations and internal quotation marks omitted).

In its June 5, 2012 Memorandum, the trial court addressed Green's Motion to Suppress the recorded evidence and concluded that it lacks merit. Memorandum, 6/5/12, at 1-3. We agree with the trial court's reasoning and legal conclusion, and affirm on this basis as to Green's claim. *See id.* We additionally note the following.

The evidence established that Deputy Wilfong, a sheriff's deputy from Monongalia County, West Virginia, obtained the recording after West Virginia authorities had stopped Green's vehicle while investigating a hit-and-run accident in West Virginia. N.T., 12/10-13/12, at 176-78. The evidence of

- 19 -

record supports the trial court's determination that Deputy Wilfong obtained the recording in compliance with West Virginia's wiretap law, and that West Virginia has the most interest in the recording of a vehicle stop on its highways, by its public officials, in the course of investigating an accident that occurred in West Virginia. Accordingly, we discern no abuse of discretion or error by the trial court in denying Green's Motion to Suppress the audio recording.

Green's sixth claim of error challenges the trial court's failure to suppress his blood alcohol test results, as those results were the "fruit of the poisonous tree." Brief for Appellant at 35. Green contends that after being secured by handcuffs and placed in a police car, and not having been apprised of his **Miranda** warnings, Trooper Popielarcheck asked whether Green had been drinking and/or felt drunk. **Id.** at 36. Green states that Trooper Popielarcheck's questions caused Green to incriminate himself, and Green's answers established the officers' probable cause to obtain a blood sample for analysis. **Id.** at 37. According to Green, because the blood alcohol test results were the fruit of the poisonous tree, the trial court erred in not suppressing the results. **Id.**

In its Memorandum filed on September 4, 2012, the trial court addressed Green's claim and concluded that it lacks merit. Trial Court Memorandum, 9/4/12, at 5-7. We agree with the sound reasoning of the

trial court, as set forth in its Memorandum, and affirm on this basis with regard to this claim. *See id.*

In his seventh claim, Green asserts that three search warrants obtained by police were overbroad and failed to offer any link between the crime charged and the evidence sought to be obtained. Brief for Appellant at 37-38. Green argues that although an affidavit prepared by Pennsylvania State Police Corporal John Weaver stated that a traffic crash had occurred and that a vehicle operated by Green was actively fleeing from police, the affidavit failed to establish probable cause that a criminal homicide had occurred. *Id.* at 38. Green further challenges, as overbroad, the warrant's seeking electronic data devices and other evidence relevant to the collision investigation. *Id.* at 39. According to Green, the second warrant is nearly identical, and the third warrant did not indicate the relationship between the crimes and the items to be searched. *Id.* at 40.

Article I, Section 8 of the Pennsylvania Constitution provides, in pertinent part, that "no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause ...." Pa. Const. Art. I § 8.

> It is a fundamental rule of law that a warrant must name or describe with particularity the property to be seized and the person or place to be searched.... The particularity requirement prohibits a warrant that is not particular enough and a warrant that is overbroad. These are two separate, though related, issues. A warrant unconstitutional for its lack of particularity authorizes a search in terms so ambiguous as to allow the executing officers to pick and choose among an individual's

possessions to find which items to seize. This will result in the general "rummaging" banned by the [F]ourth [A]mendment. A warrant unconstitutional for its overbreadth authorizes in clear or specific terms the seizure of an entire set of items, or documents, many of which will prove unrelated to the crime under investigation …. An overbroad warrant is unconstitutional because it authorizes a general search and seizure.

The language of the Pennsylvania Constitution requires that a warrant describe the items to be seized "as nearly as may be …." The clear meaning of the language is that a warrant must describe the items as specifically as is reasonably possible. This requirement is more stringent than that of the Fourth Amendment, which merely requires particularity in the description. The Pennsylvania Constitution further requires the description to be as particular as is reasonably possible…. Consequently, in any assessment of the validity of the description contained in a warrant, a court must initially determine for what items probable cause existed. The sufficiency of the description must then be measured against those items for which there was probable cause….

*Commonwealth v. Orie*, 88 A.3d 983, 1003 (Pa. Super. 2014) (quoting *Commonwealth v. Rivera*, 816 A.2d 282, 290-91 (Pa. Super. 2003)).

In its September 4, 2012 Memorandum, the trial court addressed this claim and concluded that it lacks merit. Trial Court Memorandum, 9/4/12, at 7-8. We agree with the reasoning of the trial court, and affirm on the basis of its Memorandum with regard to this claim. *See id.*

In his eighth claim, Green argues that the trial court erred in allowing the Commonwealth to introduce his prior DUI convictions. Brief for Appellant at 40. Green contends that the prejudicial impact of such evidence outweighed any relevant value. *Id.* According to Green, the Commonwealth sought to introduce his DUI convictions as his motive for

fleeing the scene of the first accident. *Id.* at 41. Green asserts that such evidence is inflammatory, and the Commonwealth's sole purpose in introducing the prior convictions is to present Green as a habitual drunk. *Id.*

"Admission of evidence is a matter within the sound discretion of the trial court, and will not be reversed absent a showing that the trial court clearly abused its discretion." *Cooper*, 941 A.2d at 667.

Generally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. Pa.R.E. 404(b)(1). "However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident." *Commonwealth v. Sherwood*, 982 A.2d 483, 497 (Pa. 2009) (citing Pa.R.E. 404(b)(2)). "In determining whether evidence of other prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact." *Sherwood*, 982 A.2d at 497. Further, "evidence of other crimes may be admitted where such evidence is part of the history of the case and forms part of the natural development of the facts." *Commonwealth v. Watkins*, 843 A.2d 1203, 1215 (Pa. 2003).

Here, evidence of Green's prior convictions formed an essential part of the history and development of the facts relevant to Green's flight from the

police officers in West Virginia. *See* N.T., 12/10-13/12, at 180 (admission of Exhibit 45); Exhibit 45 at page 6 (where, in a recording of the vehicle stop, Green explains that he failed to stop after an accident because he had four prior DUI convictions), 9 (wherein Deputy Wilfong asks Green to step out of his vehicle for a field sobriety test, and Green flees from the scene). The evidence further is relevant to Green's motive for fleeing into Pennsylvania. Finally, the relevance of this evidence is not outweighed by its prejudicial impact. Under these circumstances, we discern no error by the trial court in admitting this evidence at trial.

Finally, Green argues that the trial court erred in rendering an opinion, in its jury instructions, that Sergeant May was in an emergency response area. Brief for Appellant at 42. However, our review of the record discloses that Green offered no objection to the jury charge. Accordingly, this claim is waived. *See* Pa.R.A.P. 302(a) (stating that a claim cannot be raised for the first time on appeal).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/11/2014