J-A28040-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PHILLIP TOOMER | : | |
| | : | |
| Appellant | : | No. 985 WDA 2019 |

Appeal from the PCRA Order Entered June 10, 2019
In the Court of Common Pleas of Washington County Criminal Division at
No(s):  CP-63-CR-0002458-2002

BEFORE:  OLSON, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                **FILED: MARCH 12, 2020**

Philip Toomer (Appellant) appeals from the order entered in the Washington County Court of Common Pleas denying, as untimely, his second petition filed pursuant to the Post Conviction Relief Act (PCRA).[1]  Appellant seeks relief from the judgment of sentence imposed after his jury conviction of one count of third degree murder, and two counts each of attempted murder, aggravated assault, and recklessly endangering another person (REAP),[2] in connection with an April 2002 shooting.  Appellant contends the PCRA court erred in dismissing his second petition as untimely filed, and without first conducting an evidentiary hearing on his claims asserting the ineffective assistance of all prior counsel.  For the reasons below, we affirm.

---

[1] 42 Pa.C.S. §§ 9541-9546.

[2] 18 Pa.C.S. §§ 2502(c), 901(a), 2702, and 2705, respectively.

Appellant's convictions relate to a shooting in Monongahela, Pennsylvania, on the evening of April 15, 2002. Victims Jeffrey Harris and Gary Simms testified at trial. The third victim, Carlson Cook, died as a result of his injuries. *See Commonwealth v. Toomer*, 825 WDA 2005 (unpub. memo. at 1, 3) (Pa. Super. Dec. 8, 2006), *appeal denied*, 674 WAL 2006 (Jun. 5, 2007). This Court summarized the evidence presented at Appellant's jury trial in the decision affirming the judgment of sentence on direct appeal:

> Jeffrey Harris . . . testified that he was at DelRosa's pizza shop in Donora earlier [on the evening of April 15, 2002]. Prior to encountering [Appellant] there, Mr. Harris received word that his cousin was robbed by one of [Appellant's] associates. Mr. Harris mentioned the incident to [Appellant] in passing, and that was the extent of their interaction at DelRosa's. When DelRosa's closed at 11 p.m., Mr. Harris and [Gary] Simms went to Hitch's Hut in Monongahela, where they met Carlson Cook.

> After a period of time, [Appellant] entered Hitch's Hut with several other individuals. [Appellant] summoned Jeffery Harris outside, and he went outside with his friends Gary Simms and Carlson Cook. Immediately outside of Hitch's Hut, [Appellant] confronted Jeffrey Harris about [Appellant's] inability to make money selling drugs in the area. Although the discussion was not necessarily pleasant, the credible testimony provided by Jeffrey Harris indicated that no one in this group made any threatening gestures or comments toward [Appellant]. Regardless, at this point the owner of the bar came outside and asked the group to move their discussion down the street.

> When the group moved away from Hitch's Hut and toward the area between the bar and First Federal Bank, Jeffrey Harris testified that he heard shots being fired from a close range somewhere behind him. He immediately ran toward the middle of the area between Hitch's Hut and First Federal Bank. When Jeffrey Harris heard Carlson Cook following him into that area, he turned around to see Carlson Cook on all fours on the ground. Jeffrey Harris also saw [Appellant] standing out by the street near

- 2 -

the area between Hitch's Hut and First Federal Bank, holding a gun.

Gary Simms provided corroboration, testifying that, among other things, [Appellant] and Jeffrey Harris were talking outside of Hitch's Hut about making money in Donora, but that it didn't seem like a threatening situation. Neither Jeffrey Harris nor anyone else made any threatening comments or movements. When the owner requested [that] the group move along, Gary Simms suggested [that] they move down the sidewalk toward First Federal Bank. Mr. Simms testified that, while walking away from Hitch's Hut, he saw [Appellant] reach under his t-shirt. Assuming he was reaching for a gun, Mr. Simms immediately ran for cover behind a concrete planter and he heard gunshots. When he turned around, he saw [Appellant] shooting toward him, Jeffery Harris and Carlson Cook, and saw Carlson Cook fall to the ground.

*Id.* at 2-3 (citation omitted).

The Commonwealth also presented evidence that eight "bullet casings and six . . . bullet fragments or strikes [were identified] in the area between Hitch's Hut and First Federal Bank." *Toomer*, 825 WDA 2005 (unpub. memo. at 1) (citation omitted). Moreover, three witnesses testified that they were in the vicinity at the time of the shooting and heard noises that sounded like firecrackers or popping. *See id.* at 2. None witnessed the actual shooting, but they all saw people disperse from the scene. *See id.* One witness, Jerry Maisano, testified that he "ran down to find Jeffrey Harris and Gary Simms — unarmed — attending to Carlson Cook in the area between Hitch's Hut and First Federal Bank." *Id.* at 2 (citation omitted). As noted *supra*, Cook died from his injuries. *See id.* at 3.

At trial, Appellant testified in his own defense and claimed the shooting was in self-defense. He stated he was trying to explain the situation to Harris,

- 3 -

"that [he] had nothing to do with what was going on." N.T. Trial, 9/13-16/04 at 531. However, Harris "just looked angry." *Id.* As they walked away from Hitch's Hut, Appellant saw Harris "start[ ] to reach into his waist . . . like he was reaching for something[.]" *Id.* Appellant testified that he then "grabbed [his own] firearm," but did not begin shooting until Harris "turned around and showed [him] that he had a gun in his hand and was about to aim at [Appellant]." *Id.* at 531-32.

A jury trial was conducted before the Honorable Paul Pozonsky. On September 26, 2004, the jury found Appellant guilty of third degree murder for the death of Cook, and two counts each of attempted murder, aggravated assault and REAP, with respect to Harris and Simms. Thereafter, on December 13, 2004, the trial court sentenced him to an aggregate term of 35 to 70 years' imprisonment. Appellant was represented at trial and sentencing by private counsel, Joseph Hudak, Esquire. However, after sentencing, Joseph Zupancic, Esquire, entered his appearance and filed a post-sentence motion, challenging both the sentence imposed and trial counsel's ineffectiveness. *See* N.T. Post-Sentence Motion, 3/4/05, at 2. The trial court denied the post-sentence motion, and Appellant filed a timely appeal. This Court affirmed the judgment of sentence on direct appeal, and, on June 5, 2007, the Pennsylvania Supreme Court denied Appellant's petition for *allocatur* review. *See Toomer*, 825 WDA 2005; 674 WAL 2006.

On July 18, 2008, Appellant filed a timely, *pro se* PCRA petition, raising a myriad of claims asserting the ineffective assistance of prior counsel. *See*

Appellant's Motion for Post Conviction Collateral Relief, 7/18/08, at 3a. Jeffrey Watson, Esquire was appointed to represent him. However, on November 21, 2008, Attorney Watson filed a **Turner/Finley**[3] "No Merit Letter." **See** No Merit Letter, 11/21/08. Attorney Watson did not seek to withdraw from representation at that time. The PCRA court dismissed Appellant's petition on January 28, 2010, without first conducting an evidentiary hearing.[4] Attorney Watson filed a timely appeal to this Court, at which time he sought permission to withdraw from representation pursuant to **Turner/Finley**. On September 1, 2010, we affirmed the order denying PCRA relief, and granted Attorney Watson's petition to withdraw. Appellant's subsequent petition for allocatur review was denied by the Pennsylvania Supreme Court. **See Commonwealth v. Toomer**, 207 WDA 2010 (unpub. memo) (Pa. Super. Sep. 1, 2010), *appeal denied*, 530 WAL 2010 (Pa. Apr. 4, 2011).

---

[3] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

[4] The PCRA court complied with Pa.R.Crim.P. 907, and provided Appellant with proper notice of its intent dismiss the petition. The court originally provided Rule 907 notice on December 11, 2008, relying solely on counsel's no-merit letter. However, no final order was ever entered. The court then provided a second Rule 907 notice on December 24, 2009, again providing no reasoning for its dismissal. Thereafter, on January 7, 2010, the PCRA court issued a third Rule 907 notice, which included a detailed explanation of its decision to forgo an evidentiary hearing. **See** Notice of Dismissal, 1/7/10, at 1-10. When Appellant failed to respond within the requisite 20-day period, the PCRA court entered the order dismissing the petition on January 28, 2010.

On May 2, 2011, Appellant filed the present PCRA petition, *pro se*.[5] On March 6, 2012, Fred Rabner, Esquire, entered his appearance. On August 13, 2012, the case was reassigned to the Honorable Katherine B. Emery after Judge Pozonsky retired. Attorney Rabner filed an amended petition on August 24, 2012, asserting the ineffectiveness of all prior counsel. Attorney Rabner's first issue focused on the proposed testimony of a private investigator that a witness who was present at the shooting, Alicia Tosi, told the investigator that the three victims were armed on the night of the incident, and that she removed their guns from the crime scene before police arrived. *See* Appellant's Amended Post Conviction Relief Act Petition, 8/24/12, at 4. Attorney Rabner explained that the trial court precluded the testimony of the private investigator as hearsay, that direct appeal counsel was ineffective for failing to raise this issue on direct appeal, and that PCRA counsel was ineffective for failing to raise the ineffectiveness of direct appeal counsel.[6] *See id.* Second, Attorney Rabner asserted all prior counsel were ineffective for failing to present evidence that all three victims were armed on the night of the incident, and the police recovered bullets from their guns at the scene of the crime. *See id.* at 7.

---

[5] Appellant's May 2011 *pro se* petition is not included in the certified record.

[6] This claim is belied by the record. Although the trial court precluded Appellant from impeaching Tosi with the investigator's statement, which she did not adopt or sign, the investigator testified during Appellant's case-in-chief and stated Tosi told him "she knew they all had guns, but she did not see any guns." N.T., Trial, 322-23, 511.

On July 22, 2013, Attorney Rabner filed a motion to amend the PCRA petition, which the PCRA court granted, nearly two years later, on May 20, 2015. Thereafter, Attorney Rabner filed a second amended PCRA petition, raising an additional claim concerning the "cloud of suspicion" surrounding the judge who presided over Appellant's jury trial, including allegations that Judge Pozonsky had tampered with evidence in unrelated cases.[7] **See** Appellant's Amended Second Post Conviction Relief Act Petition at 11-12. The PCRA court scheduled an evidentiary hearing for March 22, 2017.

The evidentiary hearing was rescheduled several times. On June 22, 2018, present counsel, David Regoli, Esquire, entered his appearance. On October 9, 2018, Attorney Regoli filed a motion for leave to file another amended PCRA petition. The PCRA court granted the motion, and Attorney Regoli filed a third amended petition on November 28, 2018. He incorporated the issues raised in the prior petitions, and raised a new claim: trial counsel was ineffective for failing to interview eyewitness Vernon Majors and call him at trial, and both direct appeal and PCRA counsel were ineffective for failing to raise trial counsel's ineffectiveness. Appellant's Third Amended Post Conviction Relief Act Petition, 11/28/18, at 3 (unpaginated). Attorney Regoli averred that he first learned of Majors' existence after he entered his

---

[7] The petition averred Judge Pozonsky was the subject of a grand jury investigation based on allegations he had been "stealing cocaine and tampering with evidence which was kept in his judicial chambers on numerous cases." Appellant's Amended Second Post Conviction Relief Act Petition, 7/19/16, at 13.

appearance, and sent an investigator to interview Majors on October 13, 2018.

*Id.* at 2-3. Attached to the petition is a signed statement by Vernon Majors,

dated October 13, 2018, in which he avers the following:

> I don't remember the date, but I was never interviewed by the police when this thing happened at the bar. I had been outside that night when this happened and the police that came there talked to me. I told them that I didn't know nothing and that was it. After that night, no police or detectives or anyone else has talked to me about that night. I never talked to no defense attorney or investigators about it.
>
> The night this happened, I was outside and I was right near [Appellant] and I saw one of the other guys lift up his shirt like he had a gun. When he did that, I just turned around and took off running. As I was running away I heard some gun shots but I never looked back. I didn't see who was shooting or any of that.

*Id.*, Exhibit B, Report of Investigative Interview (Vernon Majors).

At some point, the case was transferred to the Honorable Gary Gilman.

On December 21, 2018, the PCRA court issued Pa.R.Crim.P. 907 notice of its

intent to dismiss Appellant's "multiple Amended Second PCRA Petitions" as

untimely filed, without first conducting an evidentiary hearing. *See* Order,

12/21/18, at 1; Pa.R.Crim.P. 907. Appellant filed a response on January 9,

2019, asserting his claim was not time-barred and requesting an evidentiary

hearing. Appellant's Response to Order & Notice, 1/9/19, at 3-7

(unpaginated). The Commonwealth filed a response to Appellant's petition,

stating it had no objection to an evidentiary hearing. *See* Commonwealth's

Response to Post Conviction Relief Act Petition, 3/1/19, at 2 (unpaginated).

The PCRA court conducted argument on May 23, 2019, but, thereafter, on

June 10, 2019, entered an order dismissing Appellant's petition as untimely

filed, without conducting a full evidentiary hearing. This timely appeal follows.[8]

Appellant raises two questions for our review:

I. Did the PCRA Court err in dismissing Appellant's Second PCRA Petition on the basis that said filing was untimely?

II. Did the PCRA Court err in dismissing Appellant's Second PCRA Petition without holding an evidentiary hearing to address genuine issues of material fact raised in said Petition?

Appellant's Brief at vi.

Our standard of review of an order denying PCRA relief is well-established. "[W]e examine whether the PCRA court's determination 'is supported by the record and free of legal error.'" ***Commonwealth v. Mitchell***, 141 A.3d 1277, 1283–84 (Pa. 2016) (citation omitted). Furthermore, "a PCRA petitioner is not automatically entitled to an evidentiary hearing." ***Commonwealth v. Miller***, 102 A.3d 988, 992 (Pa. Super. 2014). Rather,

> It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. It is the responsibility of the reviewing court on appeal to examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing.

***Id.*** (citation omitted).

_____

[8] The PCRA court did not order Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

The statutory requirement that a PCRA petition be filed within one year of the date the judgment of sentence becomes final is a "jurisdictional deadline" and a PCRA court may not ignore the untimeliness of a petition to address the merits of the issues raised therein. ***Commonwealth v. Whiteman***, 204 A.3d 448, 450 (Pa. Super. 2019), *appeal denied*, 216 A.3d 1028 (Pa. 2019). ***See also*** 42 Pa.C.S. § 9545(b)(1).

Here, Appellant's judgment of sentence was final on September 4, 2007 — 90 days after the Pennsylvania Supreme Court denied allocatur review of Appellant's direct appeal, and Appellant declined to petition the United States Supreme Court for a writ of *certiorari*.[9] ***See*** 42 Pa.C.S. § 9545(b)(3) (for purpose of PCRA timeliness provisions, "a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States . . . or at the expiration of time for seeking the review"); U.S. Sup. Ct. R. 13(1) ("[A] petition for a writ of certiorari to review a judgment in any case, . . . is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment."). Accordingly, his current petition, originally filed nearly four years later (May 2, 2011), is facially untimely. ***See*** 42 Pa.C.S. § 9545(b)(1).

_____

[9] The 90th day was Monday, September 3, 2007, Labor Day, a legal holiday. Therefore, Appellant had until Tuesday, September 4th to file a petition for certiorari. ***See*** U.S. Sup. Ct. R. 30(1) (for computation of time, last day shall not be included if it is a federal legal holiday).

Nevertheless, an untimely petition may be considered if one of the three timeliness exceptions applies. *See* 42 Pa.C.S. § 9545(b)(1)(i)-(iii). One of these exceptions — the newly discovered facts exception — provides relief if a petitioner pleads and proves "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence[.]" 42 Pa.C.S. § 9545(b)(2)(ii). At the time Appellant filed his PCRA petitions, Appellant was required to file a petition invoking this exception "within 60 days of the date the claim could have been presented."[10] 42 Pa.C.S. § 9545(b)(2).

In his first issue, Appellant suggests several pathways to overcome the untimeliness of his petition. First, Appellant insists that "[d]ue to the layered ineffectiveness of counsel . . . [his] second PCRA Petition was in fact timely filed." Appellant's Brief at 1. Relying on *Commonwealth v. Rivera*, 816 A.2d 282 (Pa. Super. 2003), Appellant contends his first petition was "not properly reviewed because . . . PCRA counsel [failed] to conduct an investigation into the case or . . . claims of ineffective assistance of trial and appellate counsel prior to filing a No Merit Letter." Appellant's Brief at 5. Thus, he maintains his "second PCRA petition does not qualify as a 'second or subsequent' petition subject to the [PCRA's] time restraints." *Id.* at 6. Further, Appellant emphasizes that the second petition was his first

_____

[10] This subsection was amended in 2018 to provide petitioners with one year to invoke a timeliness exception. However, the amendment applies only to "claims arising on Dec. 24, 2017 or thereafter." 42 Pa.C.S. § 9545(b)(2).

- 11 -

opportunity to raise these claims, because he could not challenge Attorney Watson's ineffectiveness until his first PCRA appeal had concluded. ***See id.*** at 7.

Similarly, Appellant also asserts the prohibition against hybrid representation precluded him from raising Attorney Watson's ineffectiveness while Attorney Watson still represented him. Appellant's Brief at 11. Thus, Appellant was not permitted to allege Attorney Watson's ineffectiveness in response to the first PCRA court's Rule 907 notice — although Attorney Watson filed a no merit letter, he did concomitantly file a petition to withdraw. ***See id.***

Alternatively, Appellant insists his claim meets the newly discovered fact exception to the PCRA's timing requirements. Appellant's Brief at 13. Appellant maintains that while "Majors' identity was not a secret," the "fact" Majors would have testified that he saw one of the victims "lift up his shirt like he had a gun[,]" was previously unknown since none of Appellant's prior counsel interviewed Majors. ***See id.*** at 13-14; Appellant's Third Amended Post Conviction Relief Act Petition at Exhibit B. Appellant acknowledges that "PCRA counsel's ineffectiveness cannot be advanced as a newly discovered 'fact'" under Section 9545(b)(1)(ii). Appellant's Brief at 14. However, he argues that when prior counsel's ineffectiveness results in the "functional equivalent of . . . having no counsel at all," such that a petitioner is "completely deprived . . . of PCRA review[,]" the Pennsylvania Supreme Court

has granted a "limited extension of the one-year time requirement." *Id.* at 14-15, *citing* **Commonwealth v. Peterson**, 192 A.3d 1123, 1133 (Pa. 2018).

We begin with the pronouncement of the Pennsylvania Supreme Court in **Commonwealth v. Robinson**, 139 A.3d 178 (Pa. 2016): "[T]here is no statutory exception to the PCRA time-bar applicable to claims alleging the ineffectiveness of post-conviction counsel." *Id.* at 186. In that case, like here, the petitioner filed a timely, first PCRA petition. *See id.* at 180. The PCRA court denied relief, and because the petitioner had been sentenced to death, the order was appealed directly to the Supreme Court, which affirmed. *Id.* at 181, 182 n.5. More than a decade after his judgment of sentence was final, the petitioner filed a second PCRA petition, asserting the ineffective assistance of **first** PCRA counsel. *Id.* at 181. The PCRA court denied the petition as untimely filed, and the petitioner appealed once again directly to the Supreme Court. *See id.* at 182.

On review, our Supreme Court declined to create an "equitable exception to the PCRA's timeliness requirements." **Robinson**, 139 A.3d at 180. The Court explained that PCRA's "statutory time-bar implicates the court's very power to adjudicate a controversy and prohibits a court from extending filing periods except as the statute permits." *Id.* at 185. Thus, the **only** exceptions to the PCRA's statutory time-bar are those outlined in Section 9545(b)(1) — and "there is no statutory exception . . . applicable to claims alleging the ineffectiveness of post-conviction counsel." *See id.* at 185-86. The Court stated: "The fact that [the petitioner] frames his issues as alleging

- 13 -

the effective assistance of PCRA counsel simply does not overcome the court's lack of jurisdiction to address them." *Id.* at 186.

Thus, Appellant's first argument — that his layered ineffectiveness claim somehow overcomes the timing requirements — fails. In support of his claim, Appellant relies on *Commonwealth v. Allen*, 732 A.2d 582 (Pa. 1999), *Commonwealth v. Ligons*, 971 A.2d 1125 (Pa. 2009) (plurality), and *Rivera*. First, we agree with the PCRA court that *Allen* is distinguishable because the second PCRA petition at issue in that case was filed **before** the 1995 enactment of the Section 9545 timing provisions. *See* Order, 12/21/18, at 7; *Allen*, 732 A.2d at 141 (second PCRA filed in November of 1994); 1995, Nov. 17, P.L. 1118, No. 32 (Spec. Sess. No. 1), § 1. Thus, the petitioner was **not** required to file his petition within one year of the date his judgment of sentence was final, nor was he required to plead and prove one of the enumerated statutory exceptions to overcome the untimeliness.

We also conclude *Ligons* and *Rivera* provide no basis for relief. The Supreme Court's plurality decision in *Ligons* involved a challenge to PCRA counsel's ineffectiveness on appeal from a **timely-filed first** PCRA petition. *See Ligons*, 971 A.2d at 1135-36, 1140-41 (explaining "the only way to afford a capital PCRA petitioner an opportunity to enforce his right to effective PCRA trial counsel is to permit the filing of such claims on appeal from the denial of PCRA relief"). Here, Appellant's ineffectiveness claims are raised in an **untimely** filed second petition.

Moreover, while **Rivera** also involved an untimely second PCRA petition, the PCRA court in that case "acknowledged [the petitioner] was **never advised** of his right to appeal the dismissal of his first PCRA petition." **See Rivera**, 816 A.2d at 287 (emphasis added). Thus, the PCRA court granted new counsel an extension of time to file an amended petition. **Id.** On appeal, this Court determined that, in light of the PCRA court's apparent grant of *nunc pro tunc* relief, we would treat his appeal "as an appeal from the denial of his first PCRA petition[.]" **See id.** at 287. In the present case, however, there is no allegation Appellant was not informed of his right to appeal the denial of his first PCRA petition; indeed, he did appeal from that order. Accordingly, **Rivera** is procedurally distinguishable.[11]

Appellant also contends that he was precluded from challenging Attorney Watson's ineffectiveness because Attorney Watson continued to represent him on appeal from the denial of his first petition. **See** Appellant's Brief at 6-8. It is well-established that a petitioner has no right to hybrid representation. **Commonwealth v. Ellis**, 626 A.2d 1137, 1139-41 (Pa. 1993). However, in **Commonwealth v. Pitts**, 981 A.2d 875 (Pa. 2009), the Supreme Court made clear that, in order to preserve a challenge to PCRA counsel's ineffectiveness or the adequacy of a "no-merit" letter, a petitioner must file a *pro se* response to either the no-merit letter or the PCRA court's

_____

[11] We note, too, **Rivera** was filed 13 years before the Supreme Court's decision in **Robinson**.

- 15 -

Rule 907 notice of intent to dismiss. *Id.* at 879 n.3. *See also id.* at 880 n.4 ("[Petitioner's] failure, prior to his PCRA appeal, to argue PCRA counsel's ineffectiveness . . . results in waiver of the issue of PCRA counsel's ineffectiveness[;] he could have challenged PCRA counsel's stewardship after receiving counsel's withdrawal letter and the notice of the PCRA court's intent to dismiss his petition pursuant to Pa.R.Crim.P. 907, yet he failed to do so."). Here, Appellant should have raised prior PCRA counsel's ineffectiveness in response to the PCRA court's Rule 907 notice. His failure to do so has waived these claims for appeal.[12]

We also reject Appellant's assertion that he could not have responded to the PCRA court's "no-merit" letter because Attorney Watson did not file a concomitant motion to withdraw. Citing a non-precedential decision of this Court, Appellant maintains that "[w]hen an attorney does not petition to withdraw at the same time the court issues a Rule 907 notice, the failure of the petitioner himself to respond does not act as a waiver of his claim for review." Appellant's Brief at 11, *citing* **Commonwealth v. Potter**, 2789 EDA 2010 (unpub. memo. at 16-17 n.6) (Pa. Super. 2013). First, as noted above, **Potter** is **not** a published decision, and therefore has no precedential

---

[12] In his brief, Appellant avers that he "did make some attempts to address the Rule 907 notices." Appellant's Brief at 12. He refers to documents that were purportedly attached to Attorney Rabner's amended petition, although they are not included in the certified record on appeal. Nevertheless, despite these alleged "attempts," it is evident Appellant never actually filed a response to the Rule 907 notice with the PCRA court. Thus, we are precluded from addressing such claims on appeal. **See Pitts**, 981 A.2d at 880 n.4.

authority. **See** Pa. Super. Ct. IOP § 65.37(B) ("An unpublished memorandum decision filed prior to May 2, 2019, shall not be relied upon or cited by a Court or a party in any other action or proceeding" except when relevant under law of the case, or decision involves same defendant in criminal action).

Second, the facts in **Potter** are distinguishable from those *sub judice*. In **Potter**, PCRA counsel did not file either a petition to withdraw or a no-merit letter; rather PCRA counsel filed both a motion for a new trial and an amended PCRA petition. **See Potter**, 2789 EDA 2010 (unpub. memo. at 5-6). In any event, this Court concluded Appellant preserved his challenge to PCRA counsel's ineffectiveness by raising the claim in a motion seeking to dismiss counsel from representation. **Id.** at 16-17 n.6. Here, Appellant failed to challenge Attorney Watson's ineffectiveness in any manner before the PCRA court.[13] Thus, no relief is warranted.

Appellant alternatively argues that his ineffectiveness claim satisfies the newly discovered fact exception to the PCRA's timing requirement set forth at

---

[13] In **Commonwealth v. Smith**, 121 A.3d 1049 (Pa. Super. 2015), a panel of this Court held that the fact a petitioner was represented by the allegedly ineffective counsel at the time Rule 907 notice was provided did not excuse the petitioner's obligation to "complain about PCRA counsel's stewardship." **Id.** at 1055. While the case law as it now stands makes it difficult, if not impossible, for a petitioner to challenge the ineffective assistance of first PCRA counsel, we note that the Pennsylvania Supreme Court recently granted *allocatur* review in another appeal to consider whether it should "devise a mechanism for the enforcement of the enforceable right to effective counsel in a first PCRA proceeding, when the current mechanism is not adequate to the enforcement of that important right[.]" **See Commonwealth v. Bradley**, 230 EAL 2020 (Pa. Dec. 23, 2020).

Section 9545(b)(1)(ii). As noted **supra**, this exception permits the filing of a PCRA petition after the one-year limitation period when the petitioner pleads and proves "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence[.]" 42 Pa.C.S. § 9545(b)(2)(ii).

Here, the fact that Majors was a witness to the shooting was **not unknown** to Appellant or Attorney Hudak at the time of trial. Indeed, several witnesses testified that Majors was present with Appellant at the time of the shooting. **See** N.T., 9/13-16/04, at 230 (Harris), 270, 303 (Simms), 480 (Monongahela City Police Officer Jason Baumgard). Indeed, Appellant recognizes that "Majors' identity was not a secret," but insists there was no way for him "to have known what Majors would have said [at trial], because he was never interviewed by any of [Appellant's] counsel." Appellant's Brief at 13-14. Moreover, he asserts: "As to due diligence, [Appellant] has been incarcerated since his arrest and his ability to communicate and investigate the facts in his case are at most barely minimal." **Id.** at 14. Rather, he maintains he "has suffered from his prior counsel's lack of effort." **Id.** Thus, Appellant's claim focuses on the dereliction of all prior counsel.

It is well-settled a claim that prior counsel rendered ineffective assistance "is not the type of after-discovered evidence encompassed by" Section 9545(b)(1)(ii). **Commonwealth v. Gamboa-Taylor**, 753 A.2d 780, 785 (Pa. 2000). Nevertheless, the Supreme Court has carved out a limited exception when PCRA counsel's action or inaction completely deprived the

petitioner of review of their collateral claims raised in a **first** PCRA petition.

**See Peterson**, 192 A.3d at 1132 ("[W]e we conclude that Counsel's untimely filing of [a] first PCRA petition constituted ineffectiveness *per se*, as it completely foreclosed [the petitioner] from obtaining review of the collateral claims set forth in his first PCRA petition.").

In **Commonwealth v. Bennett**, 930 A.2d 1264 (Pa. 2007), the Supreme Court considered whether the fact that first PCRA counsel failed to file a brief in this Court following an appeal from the denial of relief constituted an "unknown fact" under Subsection (b)(1)(ii), which would excuse the untimely filing of a second PCRA petition. **Id.** at 1272. In concluding that it did, the Supreme Court distinguished **Gamboa-Taylor** and its progeny as "situations when PCRA counsel had allegedly ineffectively **narrowed the class of claims** by not including all of the viable claims in the first petition." **Id.** However, the Court held:

> Those cases . . . have no relevance when the claim emanates from the **complete denial of counsel**. Rather, in such instances, the United States Supreme Court mandates the presumption of prejudice because the process itself has been rendered "presumptively unreliable" under the Sixth Amendment.

**Id.** at 1273 (citation omitted and emphasis added). Thus, the **Bennett** Court opined:

> Consistent with this jurisprudence, this Court has recognized a distinction between situations in which counsel has narrowed the ambit of appellate review by the claims he has raised or foregone versus those instances, as here, in which counsel has failed to file an appeal at all. To this end, we have repeatedly indicated that the failure to file a requested direct appeal or a 1925(b) statement in support thereof is the functional equivalent of having no counsel

at all. In such instances, the deprivation **requires** a finding of prejudice. Accordingly, following our prior case law, we hold that the analysis set forth in ***Gamboa–Taylor*** and subsequent case law **does not apply to situations when counsel abandons his client for purposes of appeal**. Additionally, allowing such claims to go forward would not eviscerate the time requirements crafted by the Legislature. Rather, subsection (b)(1)(ii) is a limited extension of the one-year time requirement under circumstances **when a petitioner has not had the review to which he was entitled due to a circumstance that was beyond his control**.

***Id.*** at 1273 (some emphases added and citations omitted). Accordingly, the Court remanded the case to this Court for consideration of whether the fact that prior counsel had failed to file a brief was discoverable by the petitioner if he had acted with due diligence. ***See id.*** at 1275.

Recently, in ***Peterson***, the Supreme Court concluded that "prior counsel's negligence per se in filing an **untimely** [first] PCRA petition constitute[d] adequate grounds to permit the filing of a new PCRA petition" pursuant to the newly discovered facts exception. ***Peterson***, 192 A.3d at 1125 (emphasis supplied). Similar to counsel's failure to file a brief in ***Bennett***, the ***Peterson*** Court reasoned "[c]ounsel's untimely filing of [the petitioner's] first PCRA petition . . . completely deprived [the petitioner] of any consideration of his collateral claims under the PCRA." ***Id.*** at 1130. Thus, the Court determined the petitioner properly invoked the newly discovered facts exception "to permit the filing of his second PCRA petition beyond the one-year time bar." ***Id.*** at 1132. ***See also Commonwealth v. Rosado***, 150 A.3d 425, 434 (Pa. 2016) (holding counsel's filing of a brief that "raises only waived issues . . . is . . . akin to failing to file document perfecting an appeal").

Here, Appellant insists "Attorney Watson's decision to file [a] No Merit Letter constituted ineffectiveness per se, and acted as a functional equivalent of [Appellant] having no counsel at all, because it completely deprived [Appellant] of PCRA review." Appellant's Brief at 15. We disagree. Attorney Watson's "no-merit" letter did not "completely deprive [Appellant] of any consideration of his collateral claims under the PCRA." *See Peterson*, 192 A.3d at 1130. Indeed, as the *Bennett* Court noted, "the federal constitutional standard guiding claims of appellate counsel's ineffectiveness . . . allow[s] counsel to choose among nonfrivolous claims and select the best issues for purposes of appeal." *Bennett*, 930 A.2d at 1272-73. Under Appellant's reasoning, a petitioner could assert PCRA counsel's ineffectiveness every time counsel files a *Turner*/*Finley* no-merit letter and petition to withdraw.

In the present case, although Attorney Watson filed a "no-merit" letter, this Court still conducted a review of the "myriad of ineffectiveness claims against trial and direct appeal counsel" raised in Appellant's *pro se* petition, before concluding Appellant was entitled to no relief. *See Toomer*, 207 WDA 2010 (unpub. memo. at 4, 6). Accordingly, we conclude Appellant's allegations "assert claims of ineffectiveness for **partial** deprivations of appellate review, i.e., attorney errors in narrowing the issues for review, [rather than] claims of ineffectiveness resulting in complete deprivations of appellate review, i.e., attorney errors that resulted in petitioners being dispossessed of any opportunity for appellate review." *See Peterson*, 192 A.3d at 1129 (2018). Accordingly, no relief is warranted.

- 21 -

Because Appellant's petition was untimely filed, the PCRA court had no jurisdiction to conduct an evidentiary hearing on Appellant's claim. ***See Whiteman,*** 204 A.3d at 450. Therefore, we need not address Appellant's second issue on appeal.

Thus, we agree with the ruling of the PCRA court that Appellant's petition was untimely filed, and Appellant has failed to prove the applicability of one of the time for filing exceptions. Consequently, we affirm the order on appeal.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/12/2021